**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>          v.<br><br>CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.; MORTGAGE ASSET SECURITIZATION TRANSACTIONS, INC.; DLJ MORTGAGE CAPITAL, INC.; UBS REAL ESTATE SECURITIES INC.; CREDIT SUISSE SECURITIES (USA) LLC; UBS SECURITIES LLC; LEE FARKAS; PAUL R. ALLEN; RAY BOWMAN; DELTON DE'ARMAS; DESIREE E. BROWN; ANDREW A. KIMURA; JEFFREY A. ALTABEF; EVELYN ECHEVARRIA; MICHAEL A. MARRIOTT; THOMAS ZINGALLI; DAVID MARTIN; PER DYRVIK; HUGH CORCORAN; and PETER SLAGOWITZ,<br><br>                    Defendants. | Civil Action No. 3:11-30048-MAP |

**MASSMUTUAL'S REPLY IN SUPPORT OF
ITS MOTION TO STRIKE CERTAIN PURPORTED DEFENSES**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ...........................................................................................................2

I.      DEFENDANTS MISSTATE THE LEGAL STANDARD GOVERNING THIS MOTION...................................................................................................2

II.     THE LEGALLY INVALID DEFENSES IDENTIFIED IN THE MOTION SHOULD BE STRICKEN..............................................................................3

      A.     Defendants' Arguments Demonstrate the Invalidity of Their "No Duty" Defenses ........................................................................................3

      B.     Defendants' Opposition Confirms That the "Should Have Known," "Constructive Knowledge," and "Assumed the Risk" Defenses Should Be Stricken .......................................................................................6

      C.     Defendants Fail to Justify Their Invalid Reliance Defenses....................7

      D.     Defendants Fail to Justify Their General Loss Causation Defenses........8

      E.     Failure to Mitigate or Minimize Damages Is Not a Viable Defense to a Section 410 Claim....................................................................................9

      F.     Credit Suisse's Twentieth Defense Based on Proportionate Fault Is Distinct from Statutory Contribution Rights and Is Contrary to the Plain Language of Section 410 ........................................................................11

      G.     Defendants Fail to Justify Their Assertion of Equitable Defenses to MassMutual's Statutory Claims............................................................13

CONCLUSION.......................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Access Cardiosystems, Inc.*,
   438 B.R. 16 (Bankr. D. Mass. 2010) ...................................................15

*Coach, Inc. v. Kmart Corps.*,
   756 F. Supp. 2d 421 (S.D.N.Y. 2010).................................................3

*DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*,
   No. 01 Civ. 11602, 2004 WL 635743 (S.D.N.Y. Mar. 31, 2004) ...........................2

*Dann v. Lincoln Nat'l Corp.*,
   274 F.R.D. 139 (E.D. Pa. 2011).................................................13

*Dennison v. LaPointe*,
   No. 06-40100-FDS, 2006 WL 3827516 (D. Mass. Dec. 21, 2006) ....................2-3

*Frota v. Prudential-Bache Sec., Inc.*,
   No. 85 Civ. 9698, 1987 WL 4925 (S.D.N.Y. 1987) .................................15

*Gannett Co., Inc. v. Register Publ'g Co.*,
   428 F. Supp. 818 (D. Conn. 1977).................................................15

*Go2net, Inc. v. Freeyellow.com, Inc.*,
   143 P.3d 590 (Wash. 2006)........................................................15

*Hayes v. McGee*,
   No. 10-40095-FDS, 2011 WL 39341 (D. Mass. Jan. 6, 2011) ...................2

*Jones v. Miles*,
   656 F.2d 103 (5th Cir. 1981) ....................................................14-15

*MBank Fort Worth, N.A. v. Trans Meridian, Inc.*,
   820 F.2d 716 (5th Cir. 1987) ....................................................14

*Marram v. Kobrick Offshore Fund, Ltd.*,
   442 Mass. 43, 809 N.E.2d 1017 (2004) .......................................7, 8, 9, 14, 16

*In re Olympia Brewing Co. Sec. Litig.*,
   *No. 77 C 1206*, 1985 WL 3928 (N.D. Ill. Nov. 13, 1985) ....................5, 10

*Operating Eng'rs Local 139 Health Benefit Fund v. Lake States Indus. Servs., Inc.*,
   No. 05-C-0020, 2005 WL 1563332 (E.D. Wis. June 30, 2005) ...................14

*Palmer v. Oakland Farms, Inc.*,
   No. 5:10cv00029, 2010 WL 2605179 (W.D. Va. June 24, 2010) ................14

*Patsos v. First Albany Corp.*,
   433 Mass. 323, 741 N.E.2d 841 (2001) .......................................5

*Reis Robotics USA, Inc. v. Concept Indus., Inc.*,
   462 F. Supp. 2d 897 (N.D. Ill. 2006) ..................................................................13

*SEC v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) .........................................................................15

*United States v. 729.773 Acres of Land, More or Less*,
   531 F. Supp. 967 (D. Haw. 1982) .......................................................................3

*United States v. Atl. Research Corp.*,
   551 U.S. 128 (2007)..........................................................................................12

*United States v. Manhattan-Westchester Med. Servs., P.C.*,
   No. 06 Civ. 7905 (WHP), 2008 WL 241079 (S.D.N.Y. Jan. 28, 2008) ...................................3

## **Statutes**

15 U.S.C. § 78u-4(f)(2)(B)(i)...........................................................................................12

Mass. Gen. Laws ch. 110A, § 410(a)(2) .............................................. 5, 6-7, 10, 11, 12

Mass. Gen. Laws ch. 110A, § 410(b) ...........................................................11, 12

Mass. Gen. Laws ch. 110A, § 410(c)........................................................................10

## **Miscellaneous**

5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1381 (3d ed. 2012)................2

1 Roger J. Magnuson, *Shareholder Litigation* § 5:9: Section 12(2) – Defenses (May 2012) .......15

Pursuant to the stipulation submitted on April 13, 2012, Plaintiff Massachusetts Mutual

Life Insurance Company ("MassMutual" or "Plaintiff") respectfully submits this reply

memorandum in support of its motion to strike certain purported defenses asserted by

Defendants Credit Suisse Securities (USA) LLC ("Credit Suisse") and UBS Securities LLC

("UBS," and together with Credit Suisse, "Defendants") in their respective Amended Answers.

## PRELIMINARY STATEMENT

To avoid insertion of a variety of nonissues in this otherwise straightforward case,

MassMutual has moved to strike from Defendants' Amended Answers several legally invalid

defenses that have no conceivable application to MassMutual's claims under the Massachusetts

Uniform Securities Act.  Because Defendants cannot show that any of the challenged defenses

are valid, they resort to arguments justifying other defenses they have asserted (which

MassMutual has not moved to strike), and all but ignore the challenged defenses that are the

subject of this motion.  For example, instead of attempting to justify their challenged "no duty to

disclose" defense, Defendants' argument addresses a different defense that the allegedly omitted

information did not render any statement misleading.  Instead of addressing their challenged lack

of reasonable or justifiable reliance defense, Defendants' argument addresses a different defense

that the Certificates were not sold by means of false or misleading statements.  Instead of

addressing their challenged constructive knowledge defense, Defendants' argument addresses a

different "willful blindness" defense that is not to be found in their Amended Answers.  And

instead of addressing its challenged proportionate fault defense, Credit Suisse's argument

addresses a different contribution defense, which also is asserted elsewhere.

No amount of pretending that MassMutual's motion is directed to defenses that it does

not address can save the legally invalid defenses in the Amended Answers.  When defenses are

legally invalid, a motion to strike serves the useful purpose of eliminating such insufficient

defenses to preserve the parties' and the Court's resources, to focus the issues, to discourage irrelevant frolics and detours in discovery, and to hasten resolution of the case. MassMutual's motion to strike should be granted in its entirety.

## ARGUMENT

## I.   DEFENDANTS MISSTATE THE LEGAL STANDARD GOVERNING THIS MOTION

As set forth in MassMutual's moving papers, Federal Rule 12(f) permits motions to strike purported defenses that are legally invalid and have no conceivable application to MassMutual's claims. *See, e.g.*, 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1381 (3d ed. 2012) (any defense that "would not, under the facts alleged, constitute a valid defense to the action" is "particularly vulnerable to a Rule 12(f) motion," and "can and should be deleted"). Notwithstanding Defendants' protests to the contrary, MassMutual's motion does not involve "substantial issues of law," "close or new questions of law," or factual disputes. Opp. at 3. Rather, the motion is directed exclusively to purported defenses included in the Amended Answers that have no conceivable application to this case. With respect to plainly inapplicable defenses, motions to strike are *not* disfavored and, in fact, they "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case." *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, No. 01 Civ. 11602, 2004 WL 635743, at *1 (S.D.N.Y. Mar. 31, 2004) (internal quotations omitted); *see also* Motion at 2-3 (citing additional cases).

In arguing that motions to strike are disfavored, Defendants rely on case law addressing motions to strike allegations in a complaint or defenses the success of which may depend on discovery. *See, e.g., Hayes v. McGee*, No. 10-40095-FDS, 2011 WL 39341, at *1 (D. Mass. Jan. 6, 2011) (motion to strike complaint); *Dennison v. LaPointe*, No. 06-40100-FDS, 2006 WL

3827516, at *2 (D. Mass. Dec. 21, 2006) (same); Opp. at 3-4 (citing cases involving defenses dependent on discovery). These cases have no applicability to this motion, which seeks to strike legally invalid defenses that no amount of discovery can rescue. Defendants also maintain that even legally meritless defenses should not be stricken unless MassMutual can make a separate showing of prejudice. This argument misstates the legal standard. Allowing Defendants to maintain purported defenses that are invalid as a matter of law is, by definition, prejudicial. *See, e.g.*, *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426 (S.D.N.Y. 2010) ("[I]nclusion of a defense that must fail as a matter of law prejudices the plaintiff because it will needlessly increase the duration and expense of litigation."); *United States v. Manhattan-Westchester Med. Servs., P.C.*, No. 06 Civ. 7905 (WHP), 2008 WL 241079, at *3 (S.D.N.Y. Jan. 28, 2008) ("Where a defense must fail as a matter of law, its inclusion prejudices the plaintiff because it will increase the duration and expense of trial."); *United States v. 729.773 Acres of Land, More or Less*, 531 F. Supp. 967, 971 (D. Haw. 1982) ("Although [a motion to strike] is not normally granted unless prejudice would result to the movant from the denial of the motion, *it is appropriately granted where the defense is clearly legally insufficient . . . .*" (emphasis added)).

Defendants' persistent efforts to recast the legal standard notwithstanding, there is no legitimate dispute that defenses with no conceivable legal merit threaten to confuse the issues and should be stricken.

## II.     THE LEGALLY INVALID DEFENSES IDENTIFIED IN THE MOTION SHOULD BE STRICKEN

### A.     Defendants' Arguments Demonstrate the Invalidity of Their "No Duty" Defenses

MassMutual has moved to strike Credit Suisse's fifth purported defense and UBS's eleventh purported defense that they owed no duty to MassMutual, including no duty to disclose information and no duty to verify information in the offering materials, because a "no duty"

3

defense is foreclosed by Section 410.  *See* Motion at 4-5.  Defendants do not, and cannot, dispute that "no duty to verify information" is inapplicable to this statute imposing liability for material misrepresentations.  *See* Opp. at 5-7 (failing to address defense).  Section 410(a)(2) creates a statutory "duty" that a defendant exercise reasonable care in reviewing information to avoid liability, and the "no duty to verify information" defense, which is contrary to the statute and confuses the issues, should be stricken.  *See* Motion at 5.

Not taking any of these points head on, Defendants focus exclusively on the statutory language regarding omissions, arguing that "the statute requires a duty to disclose before liability for an alleged omission can attach."  *See* Opp. at 5.  Defendants are wrong; there is nothing in the statute or relevant case law requiring a plaintiff to plead or prove a duty to disclose.  Instead, as Defendants admit, Section 410 merely requires a plaintiff to plead and prove "'any untrue statement of a material fact or any omission to state a material fact *necessary in order to make the statements made . . . not misleading*.'"  *Id.* (emphasis in original).  This language does not give rise to a "no duty" defense, as Defendants maintain, but rather to a defense that the allegedly omitted information did not render any statement misleading.  Defendants have asserted this defense in various forms, and MassMutual has not moved to strike it.  *See, e.g.*, Credit Suisse Amended Answer at 20 (Third Defense); UBS Amended Answer at 26 (Twenty-Second Defense).  Although Defendants are free to argue that omitted facts were not material or were not necessary to make the statements made not misleading, as they do in these other defenses, they are not free to advance a separate "no duty" defense that is unsupported by the statute or case law.[1]

---

[1]  Under Defendants' own authority, any defense challenging an element of a claim is separately subject to a motion to strike because the defense should be raised in the denial and not

Defendants also argue that because Section 410 imposes liability for omissions that render a statement misleading (and not for pure omissions), a duty to disclose is somehow implicated. *See* Opp. at 5-7.  But this argument proves MassMutual's point:  Because the statute does not create liability for pure omissions, only for omissions that render a corresponding statement misleading, there is no "duty to disclose" at issue under the statute. *See* Motion at 5; Opp. at 5 (citing cases making clear that a duty to disclose is implicated only when, unlike here, a plaintiff seeks to hold a defendant liable for silence).  The statute merely requires MassMutual to show that an omission rendered a statement made in the offering materials misleading. *See* Mass. Gen. Laws ch. 110A, § 410(a)(2).  MassMutual need not show in addition that Defendants owed a "duty" of disclosure, and argument about the absence of such a "duty" is not a defense. The statute itself makes irrelevant any "no duty" defense with respect to the omissions it describes, and Defendants cannot insert the defense into this case to confuse the issues or expand discovery.

Finally, Defendants assert that MassMutual would not be prejudiced by allowing them to pursue their "no duty" defenses.  Opp. at 6.  To the contrary, not only are the defenses likely to confuse the issue of what is required under the statute (the Opposition itself is evidence of that), but they also threaten to expand discovery.  Whether a duty of disclosure existed between Defendants and MassMutual could give rise to a fact-intensive inquiry involving, for example, discovery into all aspects of the relationship between Defendants and MassMutual over a period of time prior to MassMutual's purchases of the Certificates. *See, e.g.*, *Patsos v. First Albany Corp.*, 433 Mass. 323, 332-37, 741 N.E.2d 841, 849-52 (2001) (discussing the factual inquiry a court must undergo to determine if a duty to disclose exists, including examining the relationship

---

as a separate defense. *See In re Olympia Brewing Co. Sec. Litig.*, No. 77 C 1206, 1985 WL 3928, at *2 (N.D. Ill. Nov. 13, 1985); Opp. at 7.

between the parties, along with their relative knowledge and expertise).  The "no duty" defenses should be stricken, and Defendants should be left with the omissions-related defenses set forth in the statute.

**B.      Defendants' Opposition Confirms That the "Should Have Known," "Constructive Knowledge," and "Assumed the Risk" Defenses Should Be Stricken**

MassMutual has moved to strike the "should have known," "constructive knowledge," and "assumed the risk" portions of Credit Suisse's sixth and twelfth defenses and UBS's twelfth and nineteenth defenses because the law is clear that these are not viable defenses to a Section 410 claim.  *See* Motion at 6-7.  Defendants do not, and cannot, dispute that these defenses are legally invalid, *see* Opp. at 14-15, and this concession by lack of argument alone justifies striking the defenses.  *See supra* Section I.

Instead, Defendants argue in favor of another defense, a "willful blindness" defense, that is not found in their Amended Answers.  Defendants argue that the challenged defenses cannot be stricken "[i]nsofar as striking [them] would immunize Plaintiff from the defense that it was willfully blind to the alleged misstatements or omissions."  *See* Opp. at 14.  Defendants' arguments in support of a separate defense that they have not asserted are irrelevant.

First, Defendants do not explain how willful blindness, which Defendants argue is one definition of actual knowledge used in the criminal context, is the same as constructive knowledge ("should have known") and assumption of risk presented in their challenged defenses.  *See id.* at 14-15.  Second, Defendants provide no justification for importing the willful blindness doctrine from the criminal context and applying it to a securities fraud case seeking recovery under the Massachusetts Securities Act.  Defendants' cases, which apply the doctrine to culpable defendants, *see id.*, do not support applying the doctrine to a statute that, by its plain terms, specifies that only actual knowledge is a defense.  *See* Mass. Gen. Laws ch. 110A,

§ 410(a)(2).  There is particularly no reason to alter the statutory requirements given that the statute "was intended to reverse the age-old concept of caveat emptor and replace it with the concept of . . . seller beware."  *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 51, 809 N.E.2d 1017, 1026 (2004).

Also, Defendants argue that these defenses cannot be stricken because MassMutual has not made a separate showing of prejudice (beyond legal invalidity, which is conceded) with respect to the constructive knowledge and assumption of risk defenses.  Opp. at 15.  Again, a separate showing of prejudice is not required to strike legally invalid defenses.  *See supra* Section I.  In any event, allowing these defenses would risk opening discovery into additional irrelevant areas, including the reasonableness of MassMutual's investigation prior to its purchases of the Certificates, its investment history, what MassMutual "should have known" from numerous investments not at issue in this case (likely requiring expert testimony), the "risks" it assumed, and the like.  The defenses should be stricken.

### C.   Defendants Fail to Justify Their Invalid Reliance Defenses

MassMutual has moved to strike the portion of Credit Suisse's seventh defense and UBS's twentieth defense asserting that MassMutual did not reasonably or justifiably rely on any alleged misrepresentations because the law is clear that reliance is irrelevant to a claim under Section 410.  *See* Motion at 7.  Defendants do not address MassMutual's argument, and do not address the validity of a reliance defense at all.  Instead, Defendants argue that the portion of the defenses MassMutual has *not* moved to strike (which assert that the Certificates MassMutual purchased were not sold "by means of" the misrepresentations) is valid.  *See* Opp. at 12-14. Obviously, Defendants cannot maintain a legally invalid defense by combining it with a valid one.  Courts have analyzed the very "by means of" language Defendants cite and have held that

it does not impose any reliance element or support a reliance defense.  *See Marram*, 442 Mass. at 51-52, 809 N.E.2d at 1026.

Even though a reasonable and justifiable reliance defense plainly is invalid, Defendants insist that it should remain in the case because it purportedly is non-prejudicial; Defendants maintain that any discovery related to the defense will "substantially overlap with discovery relevant to other defenses that MassMutual does not seek to strike."  Opp. at 13-14.  Defendants are wrong on both counts.  First, a legally invalid defense is, by definition, prejudicial.  *See supra* Section I.  Second, perpetuating an invalid reliance defense threatens to waste time and resources on unique factual issues regarding what specific statements in the offering materials MassMutual may have reviewed or relied on[2] and on unique expert issues regarding whether MassMutual's reliance was reasonable or justifiable.  The invalid reliance defenses also should be stricken.

**D.      Defendants Fail to Justify Their General Loss Causation Defenses**

MassMutual has moved to strike Credit Suisse's eleventh defense and UBS's seventeenth defense as improper attempts to assert loss causation defenses because a loss causation defense is plainly not available under Section 410.  *See* Motion at 7-8; *Marram*, 442 Mass. at 50-51, 809 N.E.2d at 1025.  Instead of attempting to justify their loss causation defenses, which they cannot do, Defendants attempt to justify another, different defense asserted by UBS and other defendants in the related cases—that the poor performance of the underlying loans alleged in the Complaint is not evidence of underwriting failures, but resulted from other factors.  *See* Opp. at 9-12; UBS Amended Answer at 26 (Eighteenth Defense).  MassMutual has not moved to strike this defense, which challenges what inferences can be drawn from the poor performance of the

---

[2] Defendants are wrong that MassMutual's reliance is relevant to materiality.  *See* Opp. at 13-14.  The test for materiality is an objective one, and whether MassMutual read and relied on a particular statement says nothing about whether a reasonable investor would have found the statement to be material.

underlying loans.  MassMutual has challenged only the loss causation defenses, by which

Defendants seek to avoid statutory liability for material misrepresentations by arguing that

MassMutual's losses were caused by intervening or superseding events or economic or other

factors.  *See* Motion at 8.  The law is clear, under the Supreme Judicial Court's decision in

*Marram*, that such defenses do not exist.  *See id.*; *Marram*, 442 Mass. at 50-51, 809 N.E.2d at

1025.

Defendants strain to reinterpret *Marram*, arguing that its holding that Section 410

"'render[s] tainted transactions voidable at the option of the defrauded purchaser,' *regardless of*

*the actual cause of the investor's loss*," *Marram*, 442 Mass. at 51, 809 N.E.2d at 1025 (emphasis

added), actually means something other than what it says.  *See* Opp. at 11 (arguing that *Marram*

did not foreclose loss causation as a defense—just as an element of the claim).  Any fair reading

of *Marram* does not support Defendants' interpretation.  When the Supreme Judicial Court held

that a purchaser is entitled to rescind, regardless of the cause of its loss, it meant what it said—

that loss causation is irrelevant.

Because Defendants' loss causation defenses are legally invalid and threaten to expand

discovery and trial with forays into a variety of macroeconomic and microeconomic factors or

any number of undefined "intervening or superseding events" that the Supreme Judicial Court in

*Marram* confirmed are irrelevant, the defenses should be stricken.

###### E.    Failure to Mitigate or Minimize Damages Is Not a Viable Defense to a Section 410 Claim

MassMutual has moved to strike Credit Suisse's thirteenth defense and UBS's fifteenth

defense for failure to "mitigate" or "minimize" damages because a failure to mitigate defense

improperly attempts to rewrite the express recovery calculations set forth in Section 410 and to

reduce (without any authority) the recoveries permitted by statute.  *See* Motion at 8-9.

Defendants argue that because no Massachusetts Securities Act case addresses failure to mitigate, that somehow creates the defense.  *See* Opp. at 7, 9.  But the statutory language itself makes clear that the defense is invalid.  The statute sets forth the express recovery calculations—for rescission (for securities still held) and damages (for securities previously sold).  Mass. Gen. Laws ch. 110A, § 410(a)(2).  A "failure to mitigate" defense would improperly reduce these statutory calculations by seeking to subtract an additional non-statutory component—the amount a plaintiff would have received had it complied with some undefined duty to mitigate.  Further, the statute gives a plaintiff the express right to tender at any time before entry of judgment, *id.* § 410(c); imposing a duty to mitigate, or sell, would be contrary to this statutory right.

As their sole authority for imposing a duty to mitigate that conflicts with the statute, Defendants maintain the defense was allowed in one unpublished case that they represent was brought under Section 12 of the Securities Act of 1933.  Opp. at 7-8.  Not only do Defendants misrepresent this case, but the case is irrelevant to MassMutual's claims under Section 410 of the Massachusetts Securities Act.  In *In re Olympia Brewing Co. Securities Litigation*, the case Defendants cite, the court addressed a motion to strike affirmative defenses in a case involving a number of claims, including claims under the Securities Act of 1933, the Securities Exchange Act of 1934, and the common law.  *See* No. 77 C 1206, 1985 WL 3928, at *1, *10 (N.D. Ill. Nov. 13, 1985).  The court did not uphold a failure to mitigate defense because it was relevant to Section 12, as Defendants assert, but because it was potentially relevant to securities fraud claims that measure damages based on diminution in value.  *See id.* at *8, *11.  As the court held, a plaintiff asserting such claims is not entitled to recover for further diminution in value after it learns of the fraud, making a failure to mitigate defense (and an equitable estoppel defense) potentially relevant.  *See id.*  The court's analysis is not relevant to Section 410, which does not

10

measure recovery based on diminution of value and sets forth clear statutory recovery calculations that cannot be modified by judicial amendment or party agreement.

Finally, Defendants contend that there is no prejudice to allowing the failure to mitigate defense because permitting this invalid defense to persist will not unnecessarily expand discovery beyond the discovery needed for statute of limitations.  Opp. at 8-9.  To the contrary, allowing a legally invalid defense regarding when MassMutual "should have sold" will expand discovery and intrinsically would prejudice MassMutual by confusing the issue of what recovery is allowed under the statute.  In addition, the failure to mitigate defense threatens to complicate the case by supplanting the simple recovery calculations set forth in the statute with additional speculative calculations that may require significant expert discovery.  Defendants' failure to mitigate defenses, which essentially seek to rewrite the damages calculations of Section 410, should be stricken.

> **F.    Credit Suisse's Twentieth Defense Based on Proportionate Fault Is Distinct from Statutory Contribution Rights and Is Contrary to the Plain Language of Section 410**

MassMutual has moved to strike Credit Suisse's twentieth purported defense based on proportionate fault because the defense improperly seeks to reduce MassMutual's statutorily prescribed recovery based on arguments that the harm is allegedly attributable to the actions of others.  *See* Motion at 9-10.  The attempt to reduce MassMutual's recovery based on arguments about the fault of others is contrary to the provisions of Section 410, which makes every proper defendant liable for the full extent of rescission or damages.  *See id.*; Mass. Gen. Laws ch. 110A, §§ 410(a)(2), 410(b).

Credit Suisse first largely ignores the motion, asserting that MassMutual is relying on "the absence of any statutory language" setting forth a proportionate fault defense as the sole reason such a defense is foreclosed.  Opp. at 18-19 (emphasis omitted).  As MassMutual has

shown, however, a defense that damages should be reduced based on proportionate fault is foreclosed by the language of the statute awarding a plaintiff the full amount of rescission or damages and making every seller and statutory control person jointly and severally liable for the full amount.  Mass. Gen. Laws ch. 110A, §§ 410(a)(2), 410(b).  For a proportionate fault defense to be available, the Court would have to modify the terms of the statute so that it awards less than the full amount of rescission or damages depending on the proportionate fault of the defendant, which it cannot do.

Credit Suisse also argues that the proportionate fault defense is viable because a defendant is entitled to seek contribution under Section 410.  Opp. at 19-20.  But proportionate fault, which seeks to reduce statutory damages payable to MassMutual, is a separate and distinct defense from contribution, which permits partial recoupment from others after full statutory damages have been paid to MassMutual.  *Compare* 15 U.S.C. § 78u-4(f)(2)(B)(i) (proportionate fault defense to federal 1934 Act claims, which reduces a plaintiff's recovery to correspond to the "percentage of responsibility" of the defendant), *with United States v. Atl. Research Corp.*, 551 U.S. 128, 138 (2007) (defining contribution as a "tortfeasor's right to collect from others responsible for the same tort *after the tortfeasor has paid more than his or her proportionate share*" (internal quotations omitted) (emphasis added)).  The motion obviously does not seek to foreclose any contribution rights Credit Suisse or other Defendants may have after MassMutual is paid statutory damages.  Indeed, Credit Suisse has asserted contribution as its twenty-first defense, and MassMutual had not moved to strike this defense.  But any right to contribution does not justify the proportionate fault defense, which would prevent MassMutual from obtaining its full statutory recovery.

Finally, Credit Suisse argues that the proportionate fault defense should not be stricken because MassMutual has made no separate showing of prejudice related to the continued assertion of the defense.  Opp. at 20.  Again, the invalidity of the defense alone is reason to strike it.  *See supra* Section I.  In addition, the defense would prejudice MassMutual by:  (i) threatening to reduce the statutory recovery to which MassMutual is entitled; (ii) casting a cloud over otherwise plain entitlement to full statutory damages that will impede settlement discussions; and (iii) threatening to expand fact and expert discovery into the relative fault of a number of parties and non-parties that is otherwise not an issue in this case.

### G.   Defendants Fail to Justify Their Assertion of Equitable Defenses to MassMutual's Statutory Claims

MassMutual has moved to strike Credit Suisse's twenty-third defense and UBS's twenty-sixth defense asserting laches, equitable estoppel, waiver, or other related equitable doctrines because Defendants' boilerplate equitable defenses are not valid defenses to a Section 410 claim.  *See* Motion at 10-11.  The Opposition does not dispute—and in fact acknowledges—that these inapplicable defenses, if left standing, may expand discovery and unnecessarily complicate the case.  Opp. at 17-18.  Yet Defendants argue that the defenses cannot be stricken because they are viable.  *See* Opp. at 15-18.  Defendants are wrong.

As an initial matter, the bare bones equitable defenses should be stricken because they fail to provide MassMutual with "fair notice of the defense," which Defendants concede is necessary.  *See* Opp. at 18.  Merely reciting the names of three equitable doctrines and a catch-all category of other equitable doctrines does not give MassMutual fair notice of the defenses.  *See, e.g.*, *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 146 (E.D. Pa. 2011) (striking defenses of "laches, waiver and/or estoppel" because they "failed to provide [plaintiff] with fair notice"); *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 907 (N.D. Ill. 2006)

(granting motion to strike because "[m]erely stringing together a long list of legal defenses is insufficient to satisfy Rule 8(a)"); *see also Palmer v. Oakland Farms, Inc.*, No. 5:10cv00029, 2010 WL 2605179, at *6 (W.D. Va. June 24, 2010) (striking "estoppel and laches" defense because "the word estoppel without more [is] not a sufficient statement of a defense" (internal quotations omitted)); *Operating Eng'rs Local 139 Health Benefit Fund v. Lake States Indus. Servs., Inc.*, No. 05-C-0020, 2005 WL 1563332, at *4 (E.D. Wis. June 30, 2005) (same).[3]  These courts have recognized that broad and undefined defenses that could be interpreted in any number of ways and used to seek all manner of irrelevant discovery should be stricken.

Second, and more importantly, even a more specific version of these defenses would fail because equitable defenses are not viable defenses to a statutory Section 410 claim.  In its moving papers, MassMutual cited authority making clear that waiver, estoppel, and other equitable defenses are not defenses to claims under state securities statutes, including Section 410.  *See* Motion at 10-11; *Marram*, 442 Mass. at 51, 809 N.E.2d at 1025-26.  Defendants miscast this authority, claiming its rejection of equitable defenses is limited to rejection of "agreements made prior to a sale of securities that purport to waive compliance," and does not apply to equitable defenses based on subsequent conduct.  *See* Opp. at 17.  Contrary to Defendants' view, the cases and treatises hold that waiver, estoppel, and laches are not viable defenses to claims under state securities statutes or Section 12(a)(2) of the 1933 Securities Act, even if based on conduct that occurred after the purchase of securities.  *See MBank Fort Worth, N.A. v. Trans Meridian, Inc.*, 820 F.2d 716, 725 (5th Cir. 1987) ("Waiver by subsequent conduct that does not take the form of a settlement, is against the policy of the securities laws."); *Jones v.*

---

[3]  Defendants offer no legal support for their conclusory assertion that *Operating Engineers* misstates the pleading standard for affirmative defenses and is contrary to the law of this jurisdiction.  *See* Opp. at 18 n.10.

*Miles*, 656 F.2d 103, 106-07 & n.7 (5th Cir. 1981) (cited in *Marram*) (waiver by estoppel based on subsequent conduct of a securities purchaser was not a viable defense to Georgia securities claim); *Go2net, Inc. v. Freeyellow.com, Inc.*, 143 P.3d 590, 593 (Wash. 2006) ("[P]ermitting a seller to assert equitable defenses is contrary to the [Washington Securities Act's] primary purpose of protecting investors. . . . [A] seller should not be permitted to avoid statutory liability by shifting the focus to the postsale conduct of the uninformed investor."). *See generally* 1 Roger J. Magnuson, *Shareholder Litigation* § 5:9: Section 12(2) – Defenses (May 2012) ("No cases have recognized the equitable defenses of waiver, estoppel, or laches.").

The cases Defendants cite do not support their assertion of equitable defenses. *See* Opp. at 15-17. Defendants' banner case—*In re Access Cardiosystems, Inc.*, 438 B.R. 16 (Bankr. D. Mass. 2010)—did not "appl[y] equitable defenses to MUSA claims," as Defendants represent. *See* Opp. at 15. Instead, the court merely noted in *dicta* a variety of factors that could make an award of rescission under Section 410 difficult in that case, ultimately holding that an award of damages—not rescission—was proper because the plaintiff no longer owned the securities. *Access Cardiosystems*, 438 B.R. at 22-23. Defendants' remaining cases are similarly off point. *See, e.g.*, *SEC v. Ross*, 504 F.3d 1130, 1145 n.15 (9th Cir. 2007) (Section 12(a)(1) claim where laches defense was not before the court; court noted in *dicta* that an intervenor "might have" attempted a laches defense if a claim were filed); *Frota v. Prudential-Bache Sec., Inc.*, No. 85 Civ. 9698, 1987 WL 4925, at *3 (S.D.N.Y. 1987) (Section 10(b) case merely reciting the defendants' argument that waiver and estoppel could be used as a defense to securities fraud claims); *Gannett Co., Inc. v. Register Publ'g Co.*, 428 F. Supp. 818, 827-30 (D. Conn. 1977) (applying the rule under Section 10(b) "that rescission must be demanded promptly after

discovery of the fraud" to a Connecticut statute, but not addressing well-settled Massachusetts law that a purchaser has the option of rescinding at any time before the entry of judgment).

Defendants' equitable defenses, no matter how framed, are not valid defenses to claims under Section 410. Defendants' effort to graft such defenses onto the statute and destroy its "consumer-oriented focus," *Marram*, 442 Mass. at 54, 809 N.E.2d at 1027, should not be permitted, and the defenses should be stricken.

## **CONCLUSION**

For the reasons set forth above and in its opening brief, MassMutual respectfully requests that the Court grant its motion to strike the following purported defenses from the identified Defendants' Amended Answers: Fifth Defense (Credit Suisse); Sixth Defense (Credit Suisse, to the extent it asserts MassMutual "should have known" of the misstatements or omissions); Seventh Defense (Credit Suisse, to the extent it asserts MassMutual did not "reasonably or justifiably rely" on the misstatements or omissions); Eleventh Defense (Credit Suisse and UBS); Twelfth Defense (Credit Suisse, to the extent it asserts MassMutual "assumed the risks" or had "constructive knowledge"); Twelfth Defense (UBS, to the extent it asserts MassMutual "should have known" of the misstatements or omissions); Thirteenth Defense (Credit Suisse); Fifteenth Defense (UBS); Seventeenth Defense (UBS, to the extent it purports to assert a loss causation defense); Nineteenth Defense (UBS, to the extent it asserts MassMutual "assumed the risks" or had "constructive knowledge"); Twentieth Defense (Credit Suisse); Twentieth Defense (UBS, to the extent it asserts MassMutual did not "reasonably or justifiably rely" on the misstatements or omissions); Twenty-Third Defense (Credit Suisse); and Twenty-Sixth Defense (UBS).

DATED:  June 20, 2012                    EGAN, FLANAGAN AND COHEN, P.C.

By:  */s/ Edward J. McDonough Jr.*
_____
Edward J. McDonough Jr. (BBO 331590)
Stephen E. Spelman (BBO 632089)
Egan, Flanagan and Cohen, P.C.
67 Market Street, P.O. Box 9035
Springfield, Massachusetts  01102
Telephone:  (413) 737-0260
Fax:  (413) 737-0121
ejm@efclaw.com;
ses@efclaw.com

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY

Mark Roellig (BBO 669117)
Executive Vice President and General Counsel
Bernadette Harrigan (BBO 635103)
Assistant Vice President & Counsel
Eleanor P. Williams (BBO 667201)
Assistant Vice President & Counsel
Massachusetts Mutual Life Insurance Company
1295 State Street
Springfield, Massachusetts  01111
Telephone:  (413) 788-8411
Fax:  (413) 226-4268
bharrigan@massmutual.com;
ewilliams@massmutual.com

Of counsel:

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Philippe Z. Selendy (admitted *pro hac*)
Jennifer J. Barrett (admitted *pro hac*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Fax (212) 849-7100

A. William Urquhart (admitted *pro hac*)
Harry A. Olivar, Jr. (admitted *pro hac*)
Molly Stephens (admitted *pro hac*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Fax (213) 443-3100

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 20th day of June, 2012.

*/s/ Edward J. McDonough Jr.*
_____
Edward J. McDonough Jr.