UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 11-30047-MGM |
| DLJ MORTGAGE CAPITAL, INC., et al., | * * * | |
| Defendants. | * | |

| | | |
|---|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 11-30048-MGM |
| CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., et al., | * * * | |
| Defendants. | * | |

MEMORANDUM AND ORDER REGARDING
CREDIT SUISSE'S MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON THE PROPER CALCULATION OF
PREJUDGMENT INTEREST
11-30047-MGM (Dkt. No. 381); 11-30048-MGM (Dkt. No. 416)

May 2, 2017

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

In these actions, Massachusetts Mutual Life Insurance Company ("MassMutual") asserts

Credit Suisse Securities (USA) LLC ("Credit Suisse")[1] violated the Massachusetts Uniform Securities

---

[1] These actions constitute two out of eleven related actions brought by MassMutual in 2011 against various defendants. Credit Suisse is the only remaining defendant in these two actions, which have been combined for scheduling purposes

Act ("MUSA"), Mass. Gen. Laws ch. 110A, § 410, by making misstatements and omissions in the offering documents of residential mortgage-backed securities ("RMBS"). Investors in RMBS, such as MassMutual, purchase certificates entitling them to regularly scheduled payments from the underlying mortgage loan pools securitized in a trust. The payments take two forms: (1) repayments of the certificate's principal balance, which declines (or amortizes) over time as the underlying mortgages are repaid; and (2) interest payments at a specified "coupon rate."

MUSA provides in relevant part that a successful plaintiff may "recover the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security." Mass. Gen. Laws ch. 110A, § 410(a)(2). Credit Suisse seeks partial summary judgment to resolve the method and rate for calculating prejudgment interest, in the event MassMutual prevails on its claims. Specifically, Credit Suisse argues the court should (1) deduct the *interest* payments MassMutual received *before* calculating prejudgment interest[2]; and (2) utilize either the "risk-free rate" (*e.g.*, one month treasury rate) or coupon rate, rather than the six percent rate set forth in the statute. The court rejects both contentions and, therefore, will deny Credit Suisse's motion.

## II. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003). Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of

---

on a single track. (*See* 11-30047, Dkt. No. 326; 11-30048, Dkt. No. 360.) The three remaining actions (11-30044, 11-30126, and 11-30285) have been placed on a separate, slightly delayed track. (*Id.*)

[2] The parties agree that the *principal* repayments MassMutual received should be deducted prior to calculating prejudgment interest, as they amount to partial recovery of "the consideration paid for the security."

2

the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

That said, there are no disputes of material fact. Rather, Credit Suisse's motion raises purely legal questions. Moreover, the parties agree the court can and should decide these questions now. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); Advisory Committee Notes on 2010 Amendments to Fed. R. Civ. P. 56(a) ("The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but as to a claim, defense, or part of a claim or defense.").

### III. ANALYSIS

Credit Suisse asserts that just as the principal repayments MassMutual received reduce the balance on which prejudgment interest is calculated, so too should the interest payments. According to Credit Suisse, calculating prejudgment interest in this manner is consistent with MUSA's rescission remedy and prevents a potential windfall damages award, since MassMutual had the full use and benefit of the funds in the interim. Similarly, Credit Suisse asserts that, despite the six percent interest rate called for in MUSA, Massachusetts law gives the court discretion to use a lower rate, and mechanically applying a six percent rate (rather than the risk-free or coupon rate) would confer a windfall on MassMutual by placing it in a better position than if the RMBS certificates were never purchased. The court, however, agrees with MassMutual that the plain language of MUSA forecloses both of Credit Suisse's assertions.

Under Massachusetts law, "[t]he language of the statute is the starting point for all questions of statutory interpretation." *Ret. Bd. of Stoneham v. Contributory Ret. Appeal Bd.*, 65 N.E.3d 650, 655 (Mass. 2016). And if the "plain language" of the statute, informed by "the statutory scheme as a whole," *id.*, reveals its meaning, "the sole function of the courts is to enforce it according to its terms." *Commonwealth v. Soto*, 68 N.E.3d 1133, 1135 (Mass. 2017) (quoting *Commonwealth v. Dalton*, 5 N.E.3d 1206, 1208 (Mass. 2014)). In other words, "[w]here the language is clear and unambiguous, it is to be given its ordinary meaning . . . and it is conclusive as to the intent of the Legislature." *Id.* (internal citations and quotation marks omitted). That is the situation here.

As mentioned, MUSA provides that, if liability is established, the plaintiff may "recover the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security." Mass. Gen. Laws ch. 110A, § 410(a)(2). The court finds the statute clear and unambiguous as to the method of calculating prejudgment interest. The "consideration paid for the security" shall be combined "together with" prejudgment interest, plus "costs" and "reasonable attorneys' fees," *after which* the resulting figure is reduced by "the amount of any income received on the security." *Id.* Here, the "consideration paid" is the original purchase price of the certificates. Each repayment of principal MassMutual received amounted to a partial return of the "consideration paid" and, therefore, this figure is appropriately reduced using the declining principal balance before applying prejudgment interest. However, the interest payments MassMutual received clearly constitute "income received on the security." And under MUSA's damages formula—as made clear by the plain language and structure of the statute—the plaintiff's recovery is only reduced by the "income received on the security" after prejudgment interest is applied to the "consideration paid for security."

4

Judge Cote reached the same conclusion in considering similarly structured federal and state securities statutes, and the court finds her analysis persuasive. For example, in *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 2015 WL 640875 (S.D.N.Y. Feb. 16, 2015), Judge Cote construed Section 12(a)(2) of the federal Securities Act, which states that "a successful plaintiff may 'recover the consideration paid for [a] security with interest thereon, less the amount of any income received thereon.'" *Id.* at *1 (quoting 15 U.S.C. 77l(a)).[3] She concluded that "[t]he presence of 'interest thereon' in the clause concerning consideration and its absence in the clause concerning income is dispositive," explaining "[t]he statute demands that prejudgment interest be awarded, and that it be awarded on the [consideration] paid." *Id.* at *2. Similalry, in *Nat'l Credit Union Adm. Bd. v. UBS Securities LLC*, 2016 WL 1179203, *2 (S.D.N.Y. Mar. 24, 2016), Judge Cote explained that "under the plain language of the [Texas Securities Act], a successful plaintiff may recover an amount equal to: (1) the consideration it paid for the security, plus (2) interest on the consideration, minus (3) income received on the security . . . ." *See also id.* at *2 n.4 ("The TSA provides that interest is calculated on 'consideration [] paid,' in subsection (a), which is distinct from 'income [] received' under subsection (b). For that reason, interest payments are not deducted prior to calculating prejudgment interest."); *id.* at *4 & n.7 (reaching the same conclusion as to the Illinois Securities Law, which states damages are awarded "for the full amount paid, together with interest from the date of payment for the securities sold . . . less any income or other amounts received by the purchaser on the securities").

Credit Suisse principally relies on *Charles Schwab Corp v. Banc of Am. Sec. LLC*, 2014 WL 9865537 (Cal. Super. Nov. 10, 2014), a California state court decision which held the opposite in interpreting California Corporations Code section 2551. Under that statute, "the '[d]amages recoverable . . . by a purchaser shall be an amount equal to the difference between (a) the price at which the security was bought plus interest at the legal rate from the date of purchase and (b) the

---

[3] The same analysis applied to the Virginia and District of Columbia statutes, Judge Cote explained. *Id.*

5

value of the security at the time it was disposed of by the plaintiff plus the amount of any income received on the security by the plaintiff." *Id.* at *1 (quoting California Corporations Code section 25501). This court is not convinced by *Charles Schwab*'s reasoning. As MassMutual argued at the hearing, the court in *Charles Schwab* failed to adequately account for the structure of the statute. For example, the California court stated section 2251 is silent as to "the amount on which prejudgment interest should be calculated." *Id.* at *3. In this court's view, however, the statute sets forth a clear damages formula which unambiguously requires prejudgment interest to be calculated on the purchase price in subsection (a) *before* subtracting the "income received on the security" in subsection (b). *See Boam v. Trident Fin. Corp.*, 8 Cal. Rptr. 2d 177, 181 (Cal. Ct. App. 1992) ("As statutes go, the language of section 25501 is fairly straightforward, laying out a simple arithmetical formula to calculate relief: 'Consideration' + 'interest' – 'income' = recovery.").

In the end, Credit Suisse's interpretation of MUSA simply ignores the clear intent of the Legislature, as demonstrated by the plain language of the statute. *See Commonwealth v. Morgan*, --- N.E.3d ----, 2017 WL 1386799, at *6 (Mass. Apr. 18, 2017) ("The plain language of the statute, read as a whole, provides the primary insight into [legislative] intent."). Had the Massachusetts Legislature intended that prejudgment interest be calculated in the manner Credit Suisse suggests, it could have easily structured MUSA to provide that a successful plaintiff may "recover the consideration paid for the security, less the amount of any income received on the security, together with interest at six percent per year from the date of payment." That it did not do so, and instead formulated the statute so "income received" is deducted after prejudgment interest is calculated, ends matters. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 8 (1st Cir. 2007) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says. . . . Where, as here, that language is clear and unambiguous, the inquiry is at an end." (internal quotation marks and citation omitted)). While MUSA's present formulation is arguably somewhat inconsistent with the goal of a

6

rescission remedy,[4] that one consideration cannot override the express directive of the statute. *See Guardia v. Clinical & Support Options, Inc.*, 25 F. Supp. 3d 152, 163 (D. Mass. 2014) ("[S]uch broad legislative intent cannot trump the plain language of the statutes.").

Similarly, there is no basis for deviating from the statutorily prescribed six percent prejudgment interest rate. Credit Suisse cites a number of cases for the proposition that Massachusetts law permits courts to depart from the statutory interest rate when its use would result in a windfall to the plaintiff. Aside from the fact that these cases construed a separate statute with a different legislative history and policy, *see, e.g.*, *Sterilite Corp. v. Continental Cas. Co.*, 494 N.E.2d 1008, 1010-11 (Mass. 1986) (discussing Mass. Gen. Laws ch. 231, § 6C and the Legislature's intent to eliminate the common law distinction between liquidated and unliquidated damages), none of the cases substituted the statutory interest rate to which the prevailing plaintiff was entitled for a lower rate. As for Credit Suisse's argument that it is inequitable to apply a six percent rate, established in different era, in today's low-rate environment, "the remedy is a legislative amendment, not judicial fiat." *In re Funds on Deposit*, 919 F. Supp. 2d 169, 177 (D. Mass. 2012).

IV. CONCLUSION

For these reasons, Credit Suisse's motions for partial summary judgment (11-30047-MGM (Dkt. No. 381); 11-30048-MGM (Dkt. No. 416)) are DENIED.

It is So Ordered.

        /s/ Mark G. Mastroianni  
        MARK G. MASTROIANNI  
        United States District Judge

---

[4] On the other hand, the Supreme Judicial Court has explained: "The statute's thrust is both 'redressive' and 'preventive.' . . . It aims, of course, to compensate a buyer for a loss. *More importantly*, it creates a strong incentive for sellers of securities to disclose fully all material facts about the security." *Marram v. Kobrick Offshore Fund, Ltd.*, 809 N.E.2d 1017, 1025 (Mass. 2004) (emphasis added) (citation omitted). Accordingly, the Legislature could have believed that, in calculating prejudgment interest in this manner, the preventive goal of encouraging full disclosure outweighed the general policy of rescission.

7